IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-01816-RBJ

JUNE SAIZ,

    Plaintiff,

v.

CAROLYN W. WOLVIN, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER

The Court here reviews the Commissioner's denial of June Saiz's application for disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision upon the filing of plaintiff's Reply Brief on March 11, 2013, and it was reassigned to this Court on the same day. The Court apologizes to both parties for the delay in reviewing the case.

**Facts**

Procedural Background

On March 3, 2009, Ms. Saiz filed a Title II application for a period of disability and disability insurance benefits with an onset date of February 19, 2009. R. at 11. Her application was initially denied on July 6, 2009. *Id.* She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 16, 2011, with Ms. Saiz and her attorney

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

appearing by video in Pueblo, Colorado, and the ALJ presiding in Colorado Springs, Colorado. *Id.* Douglas B. Prutting, a vocational expert ("VE"), also appeared at the hearing. *Id.*

On May 19, 2011, ALJ Kathryn D. Burgchardt issued a decision denying Ms. Saiz social security benefits. R. at 11–19. Ms. Saiz pursued an internal appeal. R. at 6–7. The Appeals Council denied her request to review the ALJ's decision on June 13, 2011. R. at 1–5. The present case was filed on July 12, 2012. [#1].

Ms. Saiz's Relevant Medical History

Ms. Saiz was born on May 20, 1967 and was 41 years old on the alleged onset date of disability. R. at 17. Ms. Saiz's relevant medical record begins on February 13, 2009 when she reported to the emergency room in the Mary Corwin Medical Center for a migraine while apparently also intoxicated. R. at 211–18. Ms. Saiz refused medical treatment and was released. R. at 217.

A week later on February 20, 2009, she returned to the emergency room complaining of another headache. R. at 221–23. A subsequent MRI showed an acute left thalamic infarct—otherwise known as a thalamic stroke, and an echocardiogram showed a patent foramen ovale, which is more commonly a hole between the chambers of the heart. R. at 221, 227. Ms. Saiz was placed on aspirin and was discharged a few days later upon improvement of her condition. R. at 222.

In March 2009, Ms. Saiz's treating physician assistant at the Pueblo Community Health Center prescribed her Depakote to help with her headache complaints. R. at 257. On April 2, 2009, however, Dr. Sumant Rawat from the Pueblo Community Health Center noted that Ms. Saiz had discontinued the use of Depakote due to financial issues. R. at 294.

On November 13, 2009, Ms. Saiz fractured her ankle after she had an asthma attack and fell outside her home. R. at 315. Dr. Charles A. Hanson surgically repaired her ankle two days later. R. at 324–26. Ms. Saiz steadily improved post-surgery, and by May 13, 2010 she reported to Dr. Hanson that "her right distal foreleg and ankle have been feeling 'good' and [that she] has had no symptoms referable to the area for 2–3 months." R. at 298–99.

*Disability Application Assessments.*

On June 24, 2009, Brett Valette, Ph.D., a psychologist, conducted a consultative examination and issued a report for Ms. Saiz's disability application. R. at 260–63. Dr. Valette noted that Ms. Saiz "can hardly tell [him] anything" and that she reported "she is missing the left side of her brain." R. at 260. Dr. Valette concluded by stating that he had "a lot of concerns" about her test scores not reflecting her daily capabilities, and that it was "very difficult to really know what is going on here." R. at 263.

Dr. Mark Suyeishi, Psy. D., a state agency psychologist, performed a mental residual functional capacity ("RFC") assessment on July 3, 2009. R. at 264–67; *see also* R. at 268–81. Dr. Suyeishi concluded that work for Ms. Saiz needs "little or no judgement [sic], involving simple duties which can be learned on the job in a short period of time (up to a month)." R. at 266.

Two physical RFC evaluations were also completed—the first by Janet Weldon, a non-physician single decisionmaker ("SDM"), *see* 20 C.F.R. § 404.906(b)(2), who performed a physical RFC Assessment on July 6, 2009. R. at 282–89. A physician's assistant, Gina Todd, P.A.C., also completed a worksheet on Ms. Saiz's physical capabilities on January 12, 2011. R. at 326–48. Ms. Todd also concluded that Ms. Saiz suffered from headaches that would render her unable to function on a job. R. at 348.

ALJ's Decision

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine whether Ms. Saiz is disabled for Social Security. At step one, the ALJ found that Ms. Saiz meets the insured status requirements of the Social Security Act through September 30, 2009. R. at 13. The ALJ also found that Ms. Saiz had not engaged in substantial gainful activity from the alleged onset date of February 19, 2009. *Id*.

At step two, the ALJ found Ms. Saiz had the following severe impairments: chronic obstructive pulmonary disorder; asthma; history of right ankle fracture; and history of headache with cognitive disorder not otherwise specified ("NOS") post-thalamic infarct. *Id*. The ALJ noted but found as nonsevere Ms. Saiz's history with respect to her abuse of alcohol, which Ms. Saiz testified she had discontinued, as well as with respect to Ms. Saiz's patent foramen ovale, which the ALJ described as a "common condition [that] has been asymptomatic and required no treatment." *Id.*

Next at step three, the ALJ determined that Ms. Saiz "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. at 14. The ALJ specifically noted that Ms. Saiz's mental impairment does not cause at least two "marked" limitations or one "marked" limitation plus "repeated" episodes of decompensation, thus not satisfying the paragraph B criteria. *Id.* She further noted that paragraph C criteria were not satisfied. *Id.*

Step four requires the ALJ to assess Ms. Saiz's residual functional capacity ("RFC") in light of the medical impairments and to determine whether she is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the ALJ reviewed Ms. Saiz's medical records, observing that Ms. Saiz's complaints of headaches post-infarct "have been only

4

sporadically noted in the medical evidence of record, despite her allegations at the hearing that she experienced headaches two to three times per week." R. at 16. The ALJ specifically noted Ms. Saiz's discontinuation of her Depakote prescription treatment, "despite having been referred on several instances to patient assistance or drug company subsidy assistance programs." *Id.* Furthermore, the ALJ noted statements by Ms. Saiz showing that "[s]he was able to perform a wide variety of activities of daily living" and concluded that she only had mild limitations in social functioning. *Id.* The ALJ also included findings as to Ms. Saiz's history of asthma and chronic obstructive pulmonary disease ("COPD") and her continuing complaints of pain following her ankle fracture. R. at 17. The ALJ, having found no treating physician whose opinion would be entitled to controlling weight, incorporated recommendations by a treating source, physician's assistant Ms. Todd. *Id.*

Accordingly, the ALJ concluded that Ms. Saiz has the RFC to perform light work with the following limitations:

> simple, unskilled work with a specific vocational preparation (SVP) or one or two; could lift or carry ten pounds frequently and twenty pounds occasionally; would have no restrictions on sitting; could stand and or walk, with normal breaks, for a total of two hours in a day but five to ten minutes at one time; could perform pushing and pulling motions with her upper and lower extremities within the aforementioned weight restrictions but should avoid pushing and pulling with her right lower extremity; should be restricted to a "relatively clean" work environment, meaning one with low levels of pollutants and stable temperatures and could occasionally perform the postural activity of squatting.

R. at 15. Because Ms. Saiz had previously worked as a certified nurse assistant, which is a SVP level of four, the ALJ found that Ms. Saiz is unable to perform any past relevant work. *Id.*

At step five, the ALJ, after considering Ms. Saiz's age, education, work experience, and RFC, found that she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. at 18. In making this determination, the ALJ

relied on testimony at the hearing by the VE. *Id*. The VE testified that an individual with Ms. Saiz's age, education, work experience, and RFC would be able to perform the requirements of jobs such as order clerk, escort vehicle driver, and call out operator. *Id.* The ALJ thus denied Ms. Saiz's claim for disability benefits. R. at 19.

### Standard of Review

This appeal is based upon the administrative record and the briefs submitted by the parties. When reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992)). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). More than a scintilla, but less than preponderance is required. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence." *Id*. The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

### Conclusions

Ms. Saiz raises four issues on appeal: (1) the ALJ did not properly assess Ms. Saiz's headache condition by only restricting her to simple, unskilled work; (2) the ALJ failed to specify the weight assigned to the opinion by a state agency physician, Dr. Suyeishi; (3) the ALJ improperly incorporated only part of physician's assistant Ms. Todd's opinion; and (4) the ALJ

failed to account for Ms. Saiz's moderate impairment in concentration, persistence, and pace in her RFC. [#14] at 18–23.

### RFC Limitation to Simple, Unskilled Work.

The ALJ included a restriction to "simple, unskilled work" in Ms. Saiz's RFC specifically "in deference to the claimant's cognitive disorder NOS and headaches post-infarct." R. at 16. Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Ms. Saiz argues that this single mental RFC restriction to "simple, unskilled work" does not sufficiently account for Ms. Saiz's cognitive disorder and headaches, which the ALJ otherwise found as impairments at step three. Citing to *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012), Ms. Saiz contends that "[u]nskilled work only accounts for skill transfer, but not specific mental impairments." [#14] at 19.

The Commissioner responds that the Tenth Circuit in *Chapo* only "queried in dictum whether the limitation to 'simple, unskilled' work would adequately capture the various distinct mental limitations recognized by an opinion physician." [#19] at 17. Citing instead to *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012), the Commissioner argues that the Tenth Circuit "tacitly approve[s]" of using SVP levels to articulate the mental residual functional capacity. *Id.*

In *Chapo*, the ALJ improperly rejected the opinion of a treating medical source, consequently included only one of the multiple mental restrictions noted by that treating source, and limited the claimant to "only occasionally deal[ing] with the general public" and to "simple, unskilled work at best." 682 F.3d at 1287, 1290–91. The Commissioner is correct that footnote three of the opinion addresses an additional "fatal" error by the ALJ in failing to include even

7

that latter limitation of "simple, unskilled work at best" in her hypothetical to the VE. *Id.* at 1290 n.3.

Nonetheless, the Tenth Circuit reasoned, even if in dictum, that a limitation to "simple, unskilled work" through a SVP level of two or below only "account[s] for issues of skill transfer, not impairment of mental functions—which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Id.* (quoting *Wayland v. Chater,* Nos. 95-7029 and 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)). As the Tenth Circuit in *Wayland* explained with respect to a claimant who suffered from depression and personality disorder:

> . . . [W]hile there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here. Indeed, deficiencies in concentration like plaintiff's may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work. In short, the tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulations, is wrong.

1996 WL 50459, at *2 (citing *Frey v. Bowen*, 816 F.2d 508, 517–18 (10th Cir. 1987); *Paulson v. Bowen*, 836 F.2d 1249, 1251–52 (9th Cir. 1988); *Ingle v. Heckler*, 763 F.2d 169, 170 (4th Cir. 1985); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

Social Security Ruling 85-15 also recognizes this disparity between mental aptitude and skill level:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

SSR 85-15, 1985 WL 56857, at *2 (January 1, 1985); *see also Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (cited by *Chapo*, 682 F.3d at at 1090 n.3); 20 C.F.R. §402.35(b)(1)

(Social Security Rulings "are binding on all components of the Social Security Administration.").

This Court agrees with the reasoning of the Tenth Circuit and SSR 85-15, and it is not persuaded by whatever "tacit" approval the Commissioner seems to find in *Mounts*. "[I]t is doubtful that this vague catch-all term [of 'simple' work] would have been sufficient to capture the various functionally distinct mental limitations" otherwise shown in Ms. Saiz's records, especially without further explication by the ALJ in her findings, to the VE, or otherwise. *Chapo*, 682 F.3d at 1090 n.3; *see also* R. at 53 (In the hypothetical to the VE, the ALJ only posed as mental RFC limitations an individual who is limited to "work which is simple and unskilled with [an] SVP of 1 or 2.").

The Commissioner secondly argues that, "as explicitly acknowledged by the ALJ," the analysis at step three and the analysis at steps four and five are conceptually two different determinations, and any inconsistency between the two steps is not fatal to the ALJ's decision. [#19] at 18. The Commissioner cites to *Fries v. Chater*, 106 F.3d 413 (10th Cir. 1997), for the proposition that Ms. Saiz is improperly attempting to combine these two different analyses.

The Court is unconvinced. In *Fries*, the claimant argued that the ALJ should have considered at step three his deficits in adaptive functioning, which he argued would have changed whether he meets or equals a listed impairment. *Id.* The Tenth Circuit noted that the functional analysis performed at steps four and five are not the same as the medical equivalence analysis at step three, which is "strictly a medical determination." *Id.* (citing 20 C.F.R. §§ 404.1526(b), 416.926(b)). Unlike the claimant in *Fries*, Ms. Saiz is not attempting to carry over a functional deficiency from step four into her medical equivalence analysis at step three so as to qualify for benefits under a listed impairment. Rather, she argues that the ALJ, after explicitly

9

recognizing an impairment at step three, was required to consider that impairment at step four in formulating her RFC.

Accordingly, the Court concludes that the ALJ erred in explicitly reasoning that the limitation of "simple, unskilled work" would suffice as a limitation "in deference to the claimant's cognitive disorder NOS and headaches post-infarct." R. at 16. In making the RFC finding, the ALJ is required to consider all impairments, even those that are not severe. *See, e.g.*, 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); *see also* 20 C.F.R. § 404.1520(e); R. at 12. The ALJ did not properly account for Ms. Saiz's mental impairments of cognitive disorder and headaches in such a conclusory manner.

<u>State Agency Psychologist Dr. Suyeishi's Opinion.</u>

Ms. Saiz secondly argues that the ALJ erred because she failed to assign weight to the opinion by state agency psychologist, Dr. Suyeishi.

 "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The opinion of a treating physician is given controlling weight "as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing 20 C.F.R. § 401.1527(d)(2)). With respect to state agency physicians, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the

administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(e)(2)(ii).

Here, no treating source's opinion was given controlling weight, and the ALJ did not address the opinion of Dr. Suyeishi in her decision. To this, the Commissioner only responds that "it is implicit from the ALJ's decision that she gave great weight to Dr. Suyeishi's opinions as her findings were consistent therewith" and suggests that, to show error, the burden was on Ms. Saiz to identify a discrepancy between the ALJ's findings and Dr. Suyeishi's opinion. [#19] at 16.

However, this Court "cannot simply presume the ALJ applied the correct legal standards in considering [the] opinion" absent findings explaining the weight assigned to it. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *accord Lopez v. Astrue*, 371 F. App'x 887, 891–92 (10th Cir. 2010); *Victory v. Barnhart*, 121 F. App'x 819, 826 (10th Cir. 2005). Remand is therefore appropriate where an ALJ does not make any articulations as to the weight given to a state agency physician's opinion.

The Commissioner also appears to argue that the principle of harmless error is applicable here because the ALJ's decision is "consistent with" Dr. Suyeishi's findings. However, in Social Security disability cases, the Tenth Circuit has cautioned against application of the harmless error doctrine so as to "avoid usurping the administrative tribunal's responsibility to find the facts" and to prevent "violating the general rule against post hoc justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The doctrine should apply only when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

Furthermore, this standard does not place any onus on the applicant to show prejudice by the ALJ's error. *See Armijo v. Astrue*, 385 F. App'x 789, 792 n.4 (10th Cir. 2010).

Accordingly, the Court cannot confidently resolve this issue—the weighing of a medical opinion—in favor of the Commissioner without stepping outside the bounds of its reviewing authority. *See White*, 287 F.3d at 905 (court cannot "reweigh the evidence or substitute [its] judgment for that of the agency"). Although I express no opinion as to what weight, if any, the ALJ should give to this medical opinion, the ALJ on remand must provide sufficient explanations for her weighing of them and ensure an adequate record upon which to base her decision.

<u>Treating Source Physician's Assistant Ms. Todd's Opinion.</u>

Ms. Saiz next argues that the ALJ erred when she gave great weight to treating physician Ms. Todd's recommendations but failed to include in the RFC Ms. Todd's limitation related to Ms. Saiz's headaches.

The Court agrees with the Commissioner that the ALJ is not required to adopt or rely on any medical source opinion in totality when formulating the RFC. *Chapo*, 682 F.3d at 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Rather, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).

Here, the ALJ stated that she "review[ed] the statement prepared by physician's assistant Ginger Todd, and though this was not entitled to controlling weight, the undersigned did afford it great weight and incorporated Ms. Todd's suggested recommendations in the residual functional capacity assessment above." R. at 17. The Commissioner does not dispute that the ALJ, without stating any hesitation about Ms. Todd's opinion, did not incorporate Ms. Todd's finding that Ms. Saiz's migraines would cause her to be unable to function at work one day per week. [#19] at 15. The Commissioner instead relies on findings elsewhere in the ALJ's decision that show the ALJ's own reservations about Ms. Saiz's headache condition, such as the ALJ's attention to Ms. Saiz's discontinuation of her prescribed headache medication. [#19] at 15–16.

Nevertheless, the ALJ's decision must be "evaluated based solely on the reasons stated in the decision," and not based on counsel's *post hoc* rationalizations. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The ALJ simply does not explain the reason for rejecting only part of Ms. Todd's opinion, despite the Commissioner's *post hoc* argument that the ALJ did so because of her own evaluation of the record. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). On remand, the ALJ is instructed to address this inconsistency.

<u>Moderate Impairment in Concentration, Persistence, and Pace.</u>

Ms. Saiz lastly argues that the ALJ erred by not considering in the RFC formulation a moderate impairment in concentration, persistence and pace from step three. *See* R. at 14. The Commissioner again argues that the step three and step four analyses are distinct and that the ALJ accounted for this impairment in limiting Ms. Saiz to work with a SVP level of two or less.

As discussed in detail above, the ALJ is required to consider all impairments, even nonsevere impairments, in formulating the RFC. *See, e.g.*, 20 C.F.R. §§ 404.1545(a)(2), 404.1520(e); R. at 12. Here, the ALJ failed to discuss at all the moderate impairment in concentration, persistence and pace in her step four formulation of the RFC. The Court again is wary of adopting the Commissioner's *post hoc* rationalization that the SVP level was intended to account for these impairments. *See Robinson*, 366 F.3d at 1084. While it is true that the ALJ is not required to include a moderate impairment merely for the fact that it was included at step three, the ALJ is obligated to provide some explanation of how that impairment factored into the RFC, if at all. Again, on remand, the ALJ is instructed to address this inconsistency. *See Frantz v. Astrue*, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007).

**Order**

The decision of the ALJ is REVERSED. The case is REMANDED to the Commissioner for proceedings consistent with this order.

DATED this 8th day of October, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge